Assistant State's Attorney Phyllis Warren, on behalf of the people of the State of Illinois Good morning, Ms. Warren. Before we begin, Justice Copps is unavoidably not able to be here this morning. And so I just wanted to advise the parties that she is the third panel member and will fully participate in this case. Obviously, we've already had the briefs and the records on file. And she will have the benefit of the oral arguments today. So with that in mind, I will advise both of you that you have about 15 minutes for questions. And from that, Mr. Coppaz, you may save out some time for rebuttal. So you may be seated, Ms. Warren and Ms. Coppaz, you may proceed. Thank you. May it please the Court. Again, my name is Christopher Coppaz and I represent Anthony Triplett, the defendant in this case. I'd like to reserve maybe three minutes at least for rebuttal. Okay. In the briefs in this case, we've raised two issues. The first being the Montgomery claim, the admission of the prior conviction for impeachment purposes being improper. And the second issue being the exclusion of reverse other crimes evidence, the so-called bathtub murders. I'd like to address both issues, time permitting. As for the first issue, among Montgomery claims, it's hard to conceive of a situation where a prior conviction would be more unfairly prejudicial than in this case. Anthony Triplett was tried for the murder of Janice Fortage. And at his trial, the State was permitted to use the case involving Ursula Sekowska as other crimes evidence. Then, in defense, when Triplett testified that he didn't commit either murder, the State was permitted, over a defense objection, to introduce Triplett's prior conviction in the Sekowska case under the guise of impeaching his credibility. And the Court's admission of that... The Court really authorized the admission of a conviction for murder? Not necessarily that, is it? The jury learned that this was the conviction for Sekowska's... But the defendant introduced that prior conviction. I'm sorry. The defendant introduced his own testimony that he didn't commit either murder. And the defense certainly affronted the prior conviction. But the State was permitted to introduce that prior murder conviction for impeachment purposes under Montgomery. There was some concern, wasn't there, that the jury might think that this was like a third murder or something? That was discussed, yes. And the Court allowed the jury to hear this conviction, and we argue that was improper under Montgomery. Under Montgomery, the Court has to determine whether the probative value of this prior conviction is outweighed by the danger of unfair prejudice to the defendant. And when we're talking about unfair prejudice, we're talking about the risk that the jury's going to consider this prior conviction for something other than impeachment purposes. And it's usually the defendant, having committed a crime before, is likely to be guilty of the crime that's charged in this case. If he's done it before, he's done it again. And that risk was exceedingly strong in this case. To begin with, we're dealing with a crime of violence, first-degree murder, the most severe crime that we have in Illinois. And it's identical to the charge that triplet was being tried on, again, first-degree murder. So the severity of the crime and the identical nature of the crime alone pose a risk that the jury's going to improperly consider this prior conviction. You're not raising an appeal that there was any error in allowing the evidence of the other crimes, are you? No. Was that, though, raised at the trial? It was argued below. And the defendant was opposed to having the evidence of other crimes? Yes. But were they also alternatively arguing to use the other two offenses? Yes. Okay. I mean, having ruled that the other crimes were admissible. Yes. Then a choice was made to try to have the other. Right. So the court already ruled that the other crimes were admissible. At that point, it was simply too much to have the conviction itself entered into evidence. What's needed about the — Is it subject to a harmless error rule? The State argues, obviously, in response, that the outcome would not be different. It is subject to a harmless error. We argue that it is prejudicial. Part of what's unique about this case is the prejudice here being the State had already introduced a wealth of evidence about the Sekowska case. It was basically a repeat of the previous trial. So the jury was already being tasked with considering whether Triplett was responsible for Sekowska's and Portage's murder and whether there was some connection between the two crimes. So going now back to what I said, what is your response to the harmless error argument? That having heard that Triplett was already convicted of the Sekowska murder, the jury — that evidence was too powerful for the jury to fairly consider the issues in the case. Right. I'm saying, assuming you're correct. Yes. And so, yes. So that was part of the prejudice. The other part of the prejudice here is that this was an entirely circumstantial case that the State put forward for Triplett's guilt. Why is it entirely circumstantial if his presence is actually known and admitted to? Right. But certainly that is guilt for the murder. No, I understand. That's not admitted to. But you're saying that there's nothing in here that's really direct evidence of anything, and yet — There's certain — Excuse me. Yeah. But there was — I mean, there was evidence admitted to that he went to this particular location. There's no direct — And he was physically present. Sure. There's no direct evidence of his guilt for either murder. Certainly he was present. That doesn't constitute proof. And he admitted having physical contact with her of a consensual nature. With — Oral sex, right? Oral, yes. And he testified to that. Yes. And what makes this a case where the impeachment by prior conviction is important is that he testified as to both instances what occurred, that, yes, he was present at both scenes, but he didn't kill either woman, and he testified as to what occurred at both places, and he explained quite a bit of the evidence that the State had presented. Right. But what case says that you can't have an extremely overwhelming evidentiary case involving circumstantial evidence? You can. I mean, we're not raising a reasonable doubt here. No. So I'm trying to get from you. Yeah, yeah. They have said that if this was an error, that it was subject to the harmless error rule and that the evidence presented by the State was so overwhelming that the outcome would not have been different were this impeachment evidence never admitted. Correct. And our argument is that the evidence was not so overwhelming. Okay. So the evidence here was purely circumstantial, and Triplett himself testified at length at trial as to both. So the jury heard all of this evidence. There wasn't direct evidence that we often see in cases where we have eyewitnesses who identify a person as having committed this crime, or we have part of the crime caught on videotape, or we have the defendant giving a full-blown confession to the crime. We have none of that here. We have a case that was built upon inferences, Triplett's presence at the scene, his possession of items that were purported to be the owner's, the victim's, and some forensic evidence. Is this the one with the watch or is this the one with the iPod? I apologize. I know there were. The elected case is the iPod. Yes. Okay. And so. Which he was, which he. Which he explained. Installed to someone. Right. Which he admitted that the victim had given to him as collateral. And so all of this evidence went before the jury, and the jury was tasked with deciding, you know, the credibility of Triplett's testimony versus the State's circumstantial evidence. And having heard that Triplett has already been found guilty, having heard this prior conviction, it is. Was his position. Is this the one where he claimed that there was someone fighting with her before. Yes. Right. Okay. So did he. Did he say that in his testimony that after he stopped this argument, he then. She wanted to get a free. A hot box. A hot box. And in exchange she agreed to give him her iPod and then also gave, was willing to have consensual sex with him. Yes. And then did he explain that the other person or someone else must have come back after and then strangled her and had her, you know. I mean. Or that was never really. I mean, Triplett didn't and couldn't explain that. No, but was in his position at trial. Yeah, so that was effectively his position. Were there records about his time at this location? Yes. I mean. Go ahead. Yes, there were records about his time at the location. And then other records were forged about being at other places. Yes. And he, again, testified. So you're basically saying that if the jury heard everything but didn't hear this other impeaching instruction and the impeachment of the murder, that the jury wouldn't have concluded what they did in this case. I mean, there's a chance that they might not have. Yes, that is. Is that the standard of chance? Yeah. Yeah. We don't know for sure. I don't think the – I think Justice House's question is apropos. Right. Is that that there's a chance the jury might – what is the actual language? Whether it's – there are different ways of measuring harmlessness. Beyond a reasonable doubt. Right. That the outcome of the case would not have been different beyond a reasonable doubt. Yes. And the argument is that this evidence was so powerful and so prejudicial that it effectively directed the verdict in this case. Sure. I think we understand that position. And that's fine. What we're trying to determine is whether your opinion that this evidence was not overwhelming. Correct. And so, yes, I maintain that the evidence is not overwhelming, and I also maintain that part of the way of measuring prejudice and harmlessness is the effect of admitting this evidence. And this evidence – I mean, that's the whole point of this Montgomery rule is assessing whether the jury can fairly limit its consideration of this evidence. But we still have the test. It's beyond a reasonable doubt that it would not have – it would have been a different verdict. Yes. And, yeah, that's – Well, we have to think about that. Yes. Yes, we do. And, again, I maintain that because of the circumstantial nature of the case and Triplett's testimony, admitting – Was there two? The propensity? Yes. The same type of crime? We got a DNA and some kind of story about she was so grateful she did this for me? Yes. And so part of – Was there blood, too? There was some blood evidence, as well. And you're saying this is, like, not the typical case where you have videotaped confessions or fingerprints or what have you? It took the State a week to present this entirely circumstantial case of Triplett's guilt. Because there was so much evidence. You could say it took them a week because whatever, but others would say it took a week to put in all the evidence that was presented that was marshaled against him in this particular case. Right. But that doesn't mean that the case is overwhelming. No, it doesn't. And in the typical overwhelming cases that we see, it's cases where you have a lot of compelling evidence. What would you say is a case we should look at that you think represents overwhelming evidence of guilt versus this decision? Well, I'm not sure that I can point to a particular case to compare this to. What you're saying – but you're giving us an opinion that your subjective view is that this is not a case of overwhelming evidence when it's very unusual to have DNA, it's very unusual to actually have someone being placed at the scene, it's very unusual for there to be evidence regarding sexual assault of some kind. There's a lot of evidence here, blood evidence. There was DNA testimony. So – and then there was his own words that a jury would have to think about and decide whether or not that was actually credible or if they completely rejected it, which is apparently what they did. Yes. But I'm just – I just don't think that just because something is circumstantial that takes it out of the realm of overwhelming evidence. It certainly doesn't take it out of the realm. I'm not saying it's precluded from being overwhelming. What I'm saying is that each of these cases, when looking at harmlessness, turns on the facts of their – the facts of the case. Yes. And we have to look at the facts of the case here. And we also have to look at the nature of the error. We cited a case in the brief called Dudley where the jury heard additional – in addition to the prior conviction, the State heard some – excuse me, the jury heard information about the charges as well. And I think maybe the sentence – Doesn't that really just go to whether it's an error or not, a prejudicial error? But the court reversed. Sure. And granted for a new trial. But if we grant you this is an error and we also say this is a prejudicial error, I don't think we then decide whether that prejudicial error – I don't think that's into the equation of whether something's harmless beyond reasonable doubt. I certainly think it does because the whole point of this Montgomery test is the danger of unfair prejudice. And if you say that there's a danger of unfair prejudice here, by definition that's prejudice against the defendant, unfairly imposed against him. Sure. I understand that. But I think you're adding something now to whether or not – it has to be a prejudicial error for us to even look at harmless beyond a reasonable doubt. Right. But I maintain that the case law does not say that harmless beyond a reasonable doubt looks only at the quantum of evidence against the defendant. Okay. And we have to look at the nature of the error here. And if you don't consider this kind of error reversible error, I can't conceive of a more prejudicial Montgomery-type error than the one that occurred in this case. And so for that reason, we would argue that this Court should reverse this condition. And you did want to talk about the second issue. Yes. You may. And as for that issue, the reverse other crimes evidence, as I said, Triplett was on trial for the murder of Janice Ordage, but the State was permitted to introduce extensive other crimes evidence about the Sekowska murder to prove a modus operandi or a connection between those two offenses to show that they were so unique, so connected, that Triplett must have been the offender. The defense sought to rebut that with its own evidence that Triplett had been investigated at the police's urging for two other strikingly similar bathtub murders to see if he was involved. And he was ruled out as a suspect in those cases. The trial court did not allow the defense to present that evidence, excluding those prior cases on the basis that they weren't similar enough to the ones at issue here. And we argued that that was error. And you have to show it was an abuse of discretion. Yes. All right. And one of the reasons it's an abuse of discretion is that given the amount of room that the State had to present other crimes evidence, again, the State presented 31 witnesses over the case of this trial, about half of which pertained to the Sekowska case and the Sekowska investigation. It was an abuse of discretion. It was patently unfair to not allow the defense to present two other similar, very similar bathtub murders that the police themselves had investigated Triplett for, in order to rebut the State's modus operandi. Would it have to be modus operandi evidence in order for it to be admissible? Or do you feel that it was just enough, that it was similar enough, and that this was his defense that it should have come in? What is your answer to that? I don't think by law it has to be modus operandi. There aren't enough of these cases, I think, to be sure. Yes. But certainly in this case, the modus operandi argument that the State's making, the connection between these two crimes, is enough to allow the defense to present these other crimes. Do you think that the other two offenses meet the same modus operandi test? Yes. There are two women, two young women, found deceased in their home bathtubs, naked or partly naked, both within the city of Chicago. One was stabbed, though. One was stabbed. The one victim, Yuda Vachinka, notably was, you know, if we're talking about the Comcast connection here, she was in a relationship with a Comcast employee. That crime happened about six weeks before the ordage death occurred, very close in time. But was there any evidence of a Comcast installer coming to her home that day? Back in the record, no. And what about the other one? No, not according to our record. Okay. But the nature of those crimes were sufficiently similar to allow the defense to present them to rebut the State's modus operandi argument. You know, the State sort of had its own issues where the Sakowska and Ordage murders had very significant differences. And yet the State was allowed to present them. What were the significant differences? Ordage, well, Sakowska had the duct tape around the head. It was a very different kind of murder. It involved a blunt force trauma. She was found with duct tape wrapped tightly around her head. Weren't they both essentially strangulations? Strangulation was a part of it. Suffocation was also a part. The evidence of semen in their mouths? There was that evidence as well. Both in the bathtub, half-clad. Right, and that's a similarity to these other two. Both had a Comcast appointment or a cable appointment. Yes. Both had property taken. Yes. And so there are similarities, to be sure. But if we're only looking at similarities that might point to triplet, what's the point of a trial? The point of the trial is to allow the State to rebut the State's, to allow the defense to rebut the State's circumstantial case with evidence that the police themselves sought to determine whether triplet was involved in these crimes. I mean, these aren't crimes that triplet has pulled out of thin air. These are crimes that the police themselves looked into. They had triplet's DNA compared in the Yudevichinka case. And so, you know, the defense was entitled to present at least the bare minimum of these facts to show, hey, it's possible there's someone else who might have committed these crimes, or to really raise reasonable doubt in the minds of the jurors that triplet must have been the offender here, that there's someone, maybe someone else who's committing these murders of women in their homes and leaving them in their bathtubs nearly naked. Now, whether you agree with your argument or not, in order for us to change the decision here, we have to find no reasonable judge to do what the trial court judge did here. Can we say that? Indeed. I think the important fact here is the amount of evidence the State was allowed to present of its other crimes' evidence. It was truly, truly unfair for the defense to not be able to present its own evidence to rebut the State's modus operandi argument. The limited amount of evidence that the defense wanted to present on the basis that they weren't similar enough. When the two victims in the State's case themselves had striking similarities, it's a standard that's wildly unfair to the defendant. And that's why it's an abuse of discretion. One of the things that's often considered in other crimes' evidence is whether this might be unfair to the defendant. That's something that is a factor that's not at play here because it's the defense trying to put in this evidence. And is your position that it's not really comparing the modus operandi to evidence of other crimes? We don't do that. I'm sorry. Can you repeat that? When the judge denied the introduction of it, he said it wasn't really sufficiently similar. But are you – is it your position that you're not required to have to meet modus operandi for bringing in this other evidence? Right. In the State, the Court essentially held the defense to a higher burden of presenting other crimes' evidence. And that's inappropriate under the cases that we've cited. The defense has a right to present a defense, and holding them to a higher burden of similarity is unfair and affects the defense. It wasn't the similarity in the State's argument that this was the earmarks of a certain individual? Modus operandi, not evidence of other crimes used to show identity, intent, motive, or any other purpose? Well, yes. Under this modus operandi theory. Yes. Nothing else. But the State's argument was that it must have been triplet. But then how does triplet refute that, if not for showing other very similar crimes? I'm just wondering that if they – if there had been these other cases where the person had actually had a, you know, table appointment that – and that person actually appeared there, and, you know, I think there are some sufficient dissimilarities that the Court, you know, indicated. Like, for example, the stabbing death. And he – whatever. So – but I understand what you're saying. I think I understand your question. And our argument is that it's unfair to consider those factors only that might apply to triplet and not other factors that might suggest someone else has committed the crime. It's – you know, looking at this with such tunnel vision is improper. And what's – you know, the State was given some wiggle room about what level of similarities between the crimes were required, and the defense, you know, should have been afforded the same level of wiggle room in similarities between those crimes as well. Well, actually, propensity had a lot to do with the admission of evidence, too, right? The propensity of the defendant to commit these types of sex crimes. That was part of the reason, yes. And, you know, that's related to modus operandi. The point is that the State's showing that there's a connection between these two crimes that point to triplet. And triplet wanted to show these other crimes that he was investigated for and found not to be a suspect to rebut that claim. All right. We'll give you some time for rebuttal. Thank you, Your Honors. Is it Ms. Warren? Yes. Assistant State's Attorney Phyllis Warren on behalf of the people of the State of Illinois. Your Honors, this Court should affirm the defendant's conviction in the murder of Janice Ordridge because the trial court did not abuse its discretion when it admitted the defendant's prior conviction to impeach his credibility. It's evident from the record that the trial court was well aware of Montgomery balancing tests that it was required to undertake. Written motions were filed in this case, reply motions. A hearing was conducted. And the court, excuse me, in those written motions and during that argument, defendant made the same arguments that he raises in this appeal. And the court heard those arguments and heard those claims. And before making its ruling, the trial court first again stated the balancing test that it was required to conduct under Montgomery, the probative value versus the prejudicial effect. The court also was aware under Montgomery and its progeny that it had to make its ruling before trial, before the defendant's testimony. And after acknowledging that, the court then gave its ruling and indicated that it had considered the arguments made. It had read the motions. And it balanced it after careful consideration of balancing the probative value versus the prejudicial effect. It found that the defendant's conviction should be admitted to impeach his credibility. This ruling was not so arbitrary, unreasonable, or fanciful that no reasonable person would have gone along with it. It was based in case law. Is there any difference, though, between admitting a conviction that generally reflects on credibility versus a murder conviction? Your Honor, the case law is clear that it's not an abuse of discretion to admit a crime for a prior conviction on the same case the defendant stands on trial for now. Courts have routinely done that in people versus Mullins, people versus Atkinson, people versus Rudd, people versus Williams, in this Court, in people versus Clay, in people versus Barner. And in Atkinson, the court, the Illinois Supreme Court recognized that the prejudice of that would be tempered by a limiting instruction, which is what happened in this case. But this case isn't really like all those others because there was a trial within this trial, so to speak, when the State introduces evidence of another crime. Okay? That's one thing. And that occurred in this case. So this isn't just like a case where, let's say, there wasn't this other offense and the defendant and the State asked to, you know, impeach him if he, should he testify about a murder conviction. Okay? This is a totally different kind of slate. You have evidence of another crime, which happens to be a murder, and at the same time, you're allowing the State to present this other evidence in a rather lengthy fashion. And then, on top of that, you're also asking the Court to be allowed to introduce evidence of that conviction for that particular offense. Tell me about one of these cases you've cited that was similar to this particular scenario. Your Honor, none of those cases are similar to the scenario that happened in this case. However, those two, as Your Honor indicated, there was proof of other crimes, the murder of Ursula Sukowska, that was allowed in. But that was allowed in for an entirely separate and distinct legal purpose. Of course it was. And the jury, I apologize. Of course it was introduced, and the Court and the jurors were told that it was being introduced for that limited purpose.  Your Honor, what I'm just saying, this isn't necessarily like other cases where the Court does the Montgomery balancing and isn't, you know, in addition, has this other thing looming in the background that is, you know, evidence of another crime. Your Honor, it is a little different. You're correct. You are correct. It is different in that respect. But the trial court was well aware that that proof of other crimes in the Ursula Sukowska case was coming in. It was the Court that had rolled out the motion. And the trial court specifically took that into consideration when it conducted the Montgomery hearing. And it stated that was one of the arguments that the Defendant raised during the Montgomery hearing. And under the Court's rationale for allowing the jury to be able to hear that he had a conviction for actually the same murder, what did he say? The Court specifically. Asserted that the credibility was clearly going to be, you know, an issue. And the Court acknowledged first that it could not roll in a vacuum. It knew that the proof of other crimes was coming in. But it stated that the jury would be instructed for what purpose they could consider that evidence for. And the evidence of Ursula Sukowska's murder came in to show modus operandi, intent, identification, I'm sorry, I don't know if I said this, motive, and propensity to commit aggravated criminal sexual assault. And the jury would be instructed of that. The Court found that that was a separate and distinct legal issue than impeaching the Defendant's credibility. So notwithstanding that instruction, a jury hears this other murder evidence and then finds out that, lo and behold, the Defendant was found guilty of that same crime. Isn't that pretty powerful at that point? Your Honor, they're instructed to consider that evidence not as, excuse me, they're instructed to consider the prior conviction not as evidence of his guilt but as his credibility. So the Court knows that there's no case where it's going to be prejudicious as long as the instruction is given. Perhaps there could be, Judge. Your Honor, I apologize. Your Honor, but in the scenario in this case, in the facts of this case, it was not more prejudicial. And here, it's an abuse of discretion standard. The trial court took that into consideration. And it can't be said that that was so unreasonable or arbitrary or fanciful that no reasonable person would have gone along with it. Aren't there cases that criticize using impeachment for the very same crime the Defendant is on trial for? The Courts do caution against that. That is correct, Your Honor. And here, the Court also, in Atkinson, acknowledges. And in addition to that, we have the details of this other murder. Then we have the very same crime. For a separate and distinct legal purpose, the jury is presumed to follow the instructions that they're given. And the jury was specifically informed that they could only consider the evidence. And the Court repeatedly, every time a witness testified, as Your Honor put it, within a trial, the Court instructed them, you can only consider this limited purpose or this evidence for these limited purposes. Right. But they could consider the evidence of other crimes for propensity. For propensity to commit aggravated criminal sexual assault. That's correct, Your Honor. And the jury is a little bit different than every other case, perhaps, that the parties have talked about in their briefs, isn't it? Perhaps it is, Your Honor. And it's still the State's position that the trial court did not abuse its discretion in admitting this to impeach the defendant's credibility, because his testimony was essentially his entire defense. And in Mullins and Atkinson, the Court acknowledged that when a defendant's entire testimony makes up his entire defense, his credibility is a central issue. And prior convictions are crucial in evaluating and measuring that credibility. And the jury was entitled to that, to hear that. Let me ask you a little bit about the position that you've taken that if this is error, and counsel does agree with you that it's subject to the harmless error beyond a reasonable doubt, what is your response? Your Honor, even if this Court finds that there was a clear abuse of discretion in this matter, at the end of the day, the jurors didn't find that defendant guilty because they heard of the prior conviction. They found him guilty because of the overwhelming evidence of his guilt. Catalog it for us. The overwhelming evidence that established him as the specific attacker of Janice. The evidence at trial established that the defendant was the cable technician assigned to service Janice's home on October 21, 2006. Her manager, I'm sorry, the office manager, saw Janice around noon. The evidence at trial established that Janice's cable service was reactivated at 12.04 p.m. The records also demonstrate that between 12.03 p.m. and 12.10 p.m., she was still on the phone with her boyfriend, Andrew. At 12.18, that's the last phone call that ever comes out of Janice's phone. Her sisters repeatedly said that she was always on her phone. No other phone calls were made. Two days later, her body is found clad only in a pair of underwear, submerged inside her bathtub with the defendant's semen still in her mouth and his DNA underneath her fingernails. Now, the defendant tried to cover his tracks by falsifying the work records. He tried to make it seem like he was at Janice's house much earlier. He even forged her signature on those work orders to establish that he was there, I believe it was 9.07, 9 o'clock in the morning. And then, at the time of Janice's murder, at about around noon, the defendant forged two other work orders that placed him at two separate places, at Brazier and Michael's house. Let's not forget about the cable tool that the defendant left inside of her residence. That cable tool was found underneath the second chair by her kitchen, right where her phone was. Now, this is a cable tool that he needs to do his job. And the defendant made one phone call before her body was ever found, even though he continued working as a cable installer to get that cable tool back. Now, at trial... So, was the evidence established that her cable was turned back on at a time shortly before or, I'm sorry, immediately after her death? Shortly, the cable was turned on shortly before her death. It was at 12.04. She was still on the phone with her boyfriend, Andrew Olson, at approximately 12.03 to 12.10. I apologize. Your Honor, I'm sorry. I just lost... And you went into the tool. I'm sorry. And there was no evidence... There was no property that was involved in this case. Correct, Your Honor. And her iPod was stolen from her house. Her iPod that was eventually tracked back to the defendant because he tried to sell it to one of her neighbors. Now, at trial, the defendant admitted what he couldn't deny and denied what he wasn't willing to admit. The defendant said, sure, yes, I had sexual intercourse with her because his DNA and his semen, an overwhelming amount, was still found inside her mouth. And, oh, yes, I had her iPod. She gave it to me as collateral. Now, those two stories are absolutely incredulous. He says that this woman, who I've never met before... Was there any evidence of this box ever installed? The defendant pointed out numerous items inside her home at different points in time claiming to be a hot box, but no one found a hot box inside of her home, Your Honor. And also, that also brings up another reason why his story at trial is incredulous, that he installed a hot box for her, and as collateral, he got her iPod. Okay, the evidence established that Ms. Janice was a surgical coordinator, okay, an employee woman living in Hyde Park. Does it make any sense that she's going to say, oh, here's collateral, here's an iPod instead of some money? I mean, it's completely incredulous. Is there any other testimony relating to how his DNA got under her fingernails? Did he ever explain that? No, he did not, Your Honor. Well, I'm just... He did not, Your Honor. He did not. But he testified. He testified that the sexual encounter, if you will, was consensual with Janice. And importantly, when he was brought into the police station, a number of times, and the police talked to him, and even his own employer talked to him and said, hey, there's a woman that was found on your cable route that you went to go see. Did anything happen with her? He never told any of those people. Oh, yes, this was a consensual sex, and that she gave me... By the way, I still have her iPod, because at that time, he still had her iPod. I still have her iPod. Never told anyone that. His story at trial was completely incredulous. Not only did we have that evidence of Janice and defendants' incredulous story about what took place with Janice during that time, we also have the evidence of Ursula's murder that established, again, his modus operandi, his identity, his intent, his propensity to commit aggravated criminal sexual assaults. Again, he was the assigned cable technician to serve at... He was the assigned cable technician to Ursula's home. What about the second issue regarding the introduction of the defense's request to introduce the other crimes evidence? Your Honor, the evidence of those two bathtub murders, for lack of a better term, those two, that evidence was not even relevant, let alone fits under the qualification for modus operandi, where the evidence lacked any cognitive value and where there was no substantial or meaningful link between those cases and Ursula and Janice's case. In Ursula and Janice's case, there was very specific evidence that linked the defendant to both crimes. He was the assigned cable technician. Both women were found with the defendant's DNA still in their mouth, strangled inside their bathtub, submerged. Both women had items stolen from them that were tracked back to the defendant, Janice's iPod, Ursula's stolen credit card, her fiancé's watch. In both of those situations, the defendant tried to cover his tracks by falsifying the work orders. In the other two cases, in Leo Yudavitchicka's case and County Brown's case, there was no evidence linking either of those two unsolved cases to Janice or Ursula's case. In fact, there was no evidence connecting the two unsolved cases to anyone, let alone a single offender. There were so many factual dissimilarities between the Ursula and Janice cases and the County Brown and the Mariah cases. Neither of those two women, the Mariah or County Brown cases, as you pointed out, had a scheduled Comcast appointment. Mariah had been stabbed. While Brown had been strangled, there was no evidence of a sexual assault. No items were taken from either of those unsolved bathtub murder home. Neither of those two women, County Brown and Mariah Yudavitchicka, lived on the south side where Ursula and Janice did, and their bodies were discovered in bathtubs that were dry. Is there evidence of a sexual assault in either one of those? Your Honor, I believe in Mariah there was some semen found in her mouth. I don't know if that's evidence of a sexual assault, but a sexual encounter had taken place. The only similarities, though, between County Brown and Mariah Yudavitchicka's cases were generic. It's two women, which is roughly half the population, found in bathtubs, and that's a common household item. There's nothing that makes those two, that evidence, relevant. And the counsel spoke about the police. Yes, the police looked at those cases. At first blush, there's some generic similarities, and they investigated it. But just because the police were thorough doesn't somehow make those two cases relevant to this case. And counsel also talked about that given the fact that the State presented so much evidence of Ursula's case, that they should have been allowed to present some evidence of these other bathtub cases. But that's not the standard for the admissibility of evidence. The standard of the admissibility of evidence is relevancy. And if it's going towards modus operandi, it has to have appropriate value and a substantial meaningful link. Since those two bathtub murders did not have either of those things, the trial court did not abuse its discretion in denying the defendant admission of those. Your Honors, it is for these reasons and the reasons stated in our brief that the people would ask that you affirm the defendant's conviction. Thank you. Thank you, Your Honors. As for the other bathtub murders, if you're saying these cases are so irrelevant, so dissimilar, you're really saying the police have no idea what they're doing when they investigate crimes. Of course those two other crimes don't point to the defendant.   They don't point to the defendant. That's the whole reason that the defendant wants to present them into evidence, to suggest that maybe there is some other person who's committed murders that are strikingly similar to those for which he's on trial in this case. The State describes them as generic. I think they're frighteningly similar. Women who were found in their own homes, in the bathtub, in various states of undress. The one had a Comcast connection. There were bits of Univichenka, that is, and Univichenka also had bits of tape, a piece of tape on her knee. The tape was something that the police investigated heavily in the Sakowska case, duct tape around the head and other pieces of tape found around the house. To say that those are not, those are just generic similarities is not a credible argument. The defense should have been afforded the right to present those other bathtub murders to rebut the State's theory. And as to the first Montgomery issue, this Court I think suggested that, yes, this case is unlike a lot of others, and that's because you'll be hard-pressed to think of a case where the prior conviction would be even more prejudicial than what happened here. The State argued that that prior conviction was crucial to determining Triplett's credibility, but the State was able to cross-examine him at length and present all of the evidence supporting that other conviction. The jury didn't need to know about that conviction in order to assess his guilt. Well, were they going to be able to cross-examine him about this other case? The State did cross-examine him about both cases, about the Sakowska and the Ordage case. The State cross-examined him at length about it. The jury had everything it needed to assess his credibility as it pertained to both cases. It didn't need the prior conviction. And then finally, going back to the... Is there a discussion, though, about if the Court were not to allow the evidence of the impeachment that what would occur with the jury hearing all this other evidence? I assume the jury would have just heard the other crime's evidence with the other crime's limiting instruction. But his position was that he didn't commit that other crime. Yes. Okay. And so what was the... Was the Court to simply allow that sort of to go unanswered? No. I mean, the State... Here, I'm just trying to figure out what would the Court do if it granted your motion and then he's basically denying that other crime. So the jury would be left to, what, decide whether he's guilty of that other crime as well? Yes. I mean, that's why the State is... Even though he had already been convicted of that offense. Right. The jury doesn't need to hear about the fact of the prior conviction when it has all of the evidence from that trial in front of them already and has triplet testifying in front of them under oath, that he didn't commit this crime in explaining all of that evidence that the State had presented. It simply didn't need the conviction. You can... Well, how do you... Then how is his credibility really assessed? By the State's cross-examination, by prior inconsistent statements. The State... And they were pretty minor, but the State introduced a handful of statements that were made when he talked to police early on, and the State tried to impeach them with those. And that's how you could successfully cross-examine or attack the credibility of the defendant. The Court was basically willing only to admit the fact of a generic conviction for murder and not the particular victim in this case. Is that right? It was something that was discussed. I'm not sure if the Court – I can't recall if the Court was willing to do that, but that was... But the jury was told that this conviction was for that other crime. Yes. I think... That was before the jury. Yes. Yeah, that was – yeah. Right. So that was before the jury. And I guess a final point would be going to what we talked about earlier with, you know, whether there was overwhelming evidence of guilt or not. Essentially, you had the State's circumstantial case against Triplett's testimony. And if the jury found Triplett to be credible, then the jury would have quit. And so the evidence against him was not so overwhelming that this impeachment evidence that, you know, was very prejudicial, it's just not so overwhelming that this prior conviction would not have made a difference. Triplett testified at length about what happened, and if the jury believed that, he should be acquitted. Anything you further understand? No. I think that's all. All right. So please stand in briefs for the rest of the arguments and ask that this Court reverse his conviction and remand for a new trial. All right. Thank you. Thank you both. The case was well-argued and well-briefed. It will be taken under advisement, and we're going to take a brief recess to switch panels for the next case that's scheduled.